**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DONALD M. WOODS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 09 C 4925 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is pro se Petitioner Donald M. Woods' motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the Court denies Woods' Section 2255 motion.

## BACKGROUND

On October 3, 2006, a grand jury returned an indictment charging Woods and his co-defendant Christian Noel with conspiracy to commit bank robbery in violation of 18 U.S.C. § 371 (Count 1) and with bank robbery in violation of 18 U.S.C. § 2113(a) (Count 2). On November 7, 2006, Noel pleaded guilty to the bank robbery charge in Count 2 of the indictment. On November 30, 2007, after Noel testified at Woods' jury trial, the Court granted the government's motion for a downward departure based on Noel's substantial assistance and sentenced Noel to 38 months' imprisonment.

On September 4, 2007, Woods' jury trial commenced. Trial testimony established that in August 2005, Aimee Sefcik of Joliet, Illinois owned a blue Chevrolet Malibu with the license plate "AIMSEF6." Around September 2005, Sefcik met Woods, who became one of Sefcik's

suppliers of crack cocaine. By the end of 2005, Sefcik was in the habit of lending her blue Malibu to Woods in exchange for crack cocaine.

In July 2006, Woods asked Sefcik – whom he knew had worked at a bank – questions about bank security. She told Woods that by walking into a bank a person could see whether the bank had security cameras or guards and that bank customers could make such observations. Woods told Sefcik that he was considering robbing a bank with some other individuals. Meanwhile, in August 2006, and for several years prior, Woods' girlfriend maintained an account at the NuMark Credit Union in Joliet.

Trial testimony also shows that in the afternoon of August 4, 2006, NuMark Credit Union employee William Tierney observed Woods sitting alone in the lobby of the Credit Union. Woods came to Tierney's attention because he was talking on a cell phone, and it was against the Credit Union's policy for customers to use cell phones inside the building because cell phones could be used to take photographs presenting a security risk. Tierney approached Woods and asked him to end his call after which Woods acknowledged Tierney and shrugged off the request. Tierney then went to check on the status of a transaction, intending to return to that area of the lobby to ensure that Woods had ended his call. Tierney testified that he did not recall whether he saw Woods again that day. At trial, Tierney identified Woods as the man he encountered at the Credit Union on August 4, 2006. The Credit Union did not have security guards on duty on August 4, 2006.

At trial, Noel testified that on the evening of August 4, 2006, he walked out of a store in Joliet, after which Woods and an individual named Anthony Jenkins approached him. Noel testified that Woods was driving a blue Malibu with the license plate "AIMSEF6." Noel then

2

walked over to the car and Jenkins asked him whether he had any guns for sale. Noel answered that he did not have any guns for sale, but told Jenkins to call him the next morning and that Noel would "see what he could do."

On August 5, 2006, Woods called Sefcik around 7:13 a.m. and asked her if he could borrow her blue Malibu, after which she told him that he could as long as he returned her car in time for her to drive to work at 10:30 a.m. that day. Shortly after calling Sefcik, Woods walked over to her house, took her car keys, and left in her car. Thereafter, Woods and Jenkins arrived at Noel's house driving the blue Malibu. Jenkins asked Noel whether he had any guns. Noel told him that he did not have any guns, but that he had two BB guns in his bedroom. Jenkins and Woods told him to get the BB guns, one of which resembled a black revolver. The other BB gun resembled a rifle.

Noel then asked Woods and Jenkins if he could ride with them and they told him to get in the car. Although Noel did not know the specifics, he testified that he assumed that they were going to rob someone or something. Noel got into the back seat of the Malibu and Jenkins was in the front passenger seat. As Woods drove away, Noel noticed that on the back seat there was a white t-shirt with a pair of red sunglasses laying on top of it. Under the t-shirt was a "weather mask." Woods told Noel to put the items on, and Noel did so. Noel was already wearing a blue bandana over his head when he put the weather mask over his face and put on the red sunglasses. Jenkins was wearing a hooded sweatshirt and around his neck he was wearing a sleeve that had been cut from a short sleeve t-shirt.

As Woods and Jenkins discussed where to go, Noel testified that Woods said words to the effect of, "the one down there will be a good one because that's where my girl cashes her

3

checks at and there's no security." Woods then drove them to the NuMark Credit Union. While the car was in the Credit Union parking lot, Jenkins turned to Noel and asked him whether he was ready and Noel said yes. Jenkins then slid the cutoff t-shirt sleeve up over his face, and he and Noel got out of the car. They then went into the NuMark Credit Union. Both Jenkins and Noel were masked and carried the BB guns.

Inside the Credit Union, Noel and Jenkins yelled at the tellers to give them money. They then jumped up on the counter at a teller station and reached over the counter to help themselves to cash that was inside the drawers behind the counter. Jenkins demanded that a teller give him a bag for the cash and Noel made the same demand to another teller. The tellers gave Jenkins and Noel empty trash bags and they stuffed cash into the bags. Noel and Jenkins then jumped off the counters, ran outside, and got into the blue Malibu where Woods was waiting. Trial testimony reveals that a Credit Union employee saw Jenkins and Noel leave the Credit Union and get into a Chevrolet Malibu with license plate "AIMSEF" and ending with a number. The employee also saw a man sitting in the driver's seat when Jenkins and Noel entered the car.

After the bank robbery, Woods drove Jenkins and Noel out of the parking lot. While they were on the road, Jenkins split the larger bills between the three of them. When they arrived at Woods' house, they went into the garage and divided the smaller bills. Woods then took the two BB guns from under the front passenger seat of the blue Malibu and hid them in the back seat of a car that was in his garage. After that, Wood wiped the door handles of the blue Malibu with his shirt. He tried to call Sefcik at 10:15, 10:26 and 10:28 a.m on August 5, 2006 to no avail. Woods then drove Noel and Jenkins to Sefcik's house around 10:30 a.m. to return her car.

On August 7, 2006, two days after the robbery, officers of the Joliet Police Department and the FBI arrested Noel. Noel admitted that he had robbed the Credit Union with Woods and Jenkins. After midnight, Noel worked with the officers to place a recorded call to Woods. The officers dialed Woods' cell phone using Noel's cell phone and recorded the conversation. During the conversation, Noel told Woods that the police had pulled him over in his truck, but that he got away from them. Noel asked Woods what had happened to Jenkins and Woods said that Jenkins had left town because he thought Noel had been arrested. Woods then told Noel to stay off the telephone. Within one minute after Woods hung up with Noel, Woods called Jenkins. Later that day, Woods changed his cell phone number.

Thereafter, Woods and Noel were arrested and charged with bank robbery and conspiracy to commit bank robbery. Jenkins was not charged. After the jury convicted Woods, the Court sentenced him to 60 months' imprisonment on the conspiracy charge in Count 1 and 160 months' on the bank robbery charge in Count 2 with the sentences to run consecutively. On February 17, 2009, the United States Court of Appeals for Seventh Circuit affirmed Woods' convictions and sentence on direct appeal. *See United States v. Woods,* 556 F.3d 616 (7th Cir. 2009).

**LEGAL STANDARD**

"[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). Also, "[r]elief under § 2255 is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum

5

authorized by law, or it is otherwise subject to collateral attack.*" Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255); *see also Hays v. United States,* 397 F.3d 564, 566-67 (7th Cir. 2005). A Section 2255 motion is not a substitute for a direct criminal appeal nor is it a means by which a defendant may appeal the same claims a second time. *See Varela v. United States,* 481 F.3d 932, 935 (7th Cir. 2007) (Section 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal.") (citation omitted). Accordingly, if a Section 2255 petitioner does not raise a claim on direct appeal, that claim is barred from the Court's collateral review unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal, *see Fuller v. United States,* 398 F.3d 644, 648 (7th Cir. 2005), that enforcing the procedural default would lead to a "fundamental miscarriage of justice," *see Anderson v. Benik,* 471 F.3d 811, 815 (7th Cir. 2006), or a change of circumstances involving facts or law. *See Varela,* 481 F.3d at 935-36. Because claims of constitutionally ineffective assistance of counsel usually involve evidence outside the record, such claims may be brought for the first time in a Section 2255 motion. *See Massaro v. United States,* 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); *Torzala,* 545 F.3d at 524.

**ANALYSIS**

Construing Woods' pro se Section 2255 motion liberally, *see Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009), he brings the following claims: (1) the Court erred by instructing the jury that they should convict Woods of the bank robbery charge in Count 2 if they convicted him of the conspiracy charge in Count 1; (2) the Court's imposition of sentences for 60 months' incarceration for Count 1 and 160 months' incarceration for Count 2 punished Woods twice for the same offense; (3) the indictment was multiplicitous because the same offense was charged in

6

both counts of the indictment; and (4) ineffective assistance of trial and appellate counsel.

Woods did not raise his first three claims in his direct criminal appeal, and thus it appears that they are procedurally defaulted. *See Torzala,* 545 F.3d at 522. The government, however, has failed to argue that Woods procedurally defaulted these claims. Because procedural default is an affirmative defense, the government has waived any such procedural default. *See Gray v. Netherland,* 518 U.S. 152, 165-66, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *Torzala,* 545 F.3d at 522. Meanwhile, Woods properly brought his ineffective assistance of counsel claims for the first time in the present Section 2255 motion. *See Torzala,* 545 F.3d at 524. The Court thus turns to the merits of Woods' claims.

## I. Constructive Amendment of Indictment

Woods' first claim in his Section 2255 motion is that the Court erred by instructing the jury that they should convict Woods of the bank robbery charge in Count 2 if they convicted him of the conspiracy charge in Count 1. In particular, Woods argues that the Court constructively amended the bank robbery charge in Count 2 of the indictment by giving the Seventh Circuit Criminal Pattern Instruction 5.09, also known as the *Pinkerton* instruction. At trial, the Court instructed the jury as follows:

> A conspirator is responsible for offenses committed by his fellow conspirators if he was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of and as a foreseeable consequence of the conspiracy.
>
> Therefore, if you find the defendant guilty of the conspiracy charged in Count 1 and if you find beyond a reasonable doubt that while he was a member of the conspiracy, his fellow conspirators committed the offense in Count 2 in furtherance of and as a foreseeable consequence of that conspiracy, then you should find him guilty of Count 2, as well.

(06 CR 0561, R. 134, Trial Tr., at 666-67.)

In *Pinkerton*, the United States Supreme Court held that a co-conspirator may be held criminally liable for the foreseeable acts of others in furtherance of a conspiracy. *See Pinkerton v. United States,* 328 U.S. 640, 647-48, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *United States v. Rawlings,* 341 F.3d 657, 660 (7th Cir. 2003) ("*Pinkerton* ascribes the crimes of coconspirators to each other." ). In other words, "every member of a conspiracy is substantively culpable for other conspirators' acts within the scope of the conspiracy." *United States v. Hoover,* 246 F.3d 1054, 1057-58 (7th Cir. 2001).

Under *Pinkerton* and its progeny, the Seventh Circuit's Pattern Instruction 5.09 and the Court's near verbatim recitation of this instruction did not constructively amend the indictment as Woods argues. Instead, the instruction correctly states the law under *Pinkerton* and applies to the evidence presented at trial in this matter, namely, evidence of Woods' participation in the conspiracy to commit the bank robbery. *See United States v. Wantuch,* 525 F.3d 505, 519-20 (7th Cir. 2008)*; see also United States v. Chavin,* No. 99 CR 282-1, 2001 WL 619505, at *8 (N.D. Ill. May 11, 2001) ("Pattern Instruction 5.09 explains that a conspirator is responsible for the crimes committed by his co-conspirator, [is] an accurate statement of the law."). As such, Woods' first Section 2255 claim fails.

**II.     Impermissible Punishment for Same Offense**

Next, Woods maintains that the Court's imposition of consecutive terms of 60 months' imprisonment for Count 1 and 160 months' imprisonment for Count 2 punished him twice for the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. Woods' argument is misplaced because it is well-established that conspiracy to commit an offense and the underlying substantive offense are two separate and

8

distinct criminal offenses. *See Pinkerton,* 328 U.S. at 643. As the *Pinkerton* Court held:

> It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses. The power of Congress to separate the two and to affix to each a different penalty is well established.... And the plea of double jeopardy is no defense to a conviction for both offenses.

*Id.* (internal citation omitted); *see also United States v. Felix,* 503 U.S. 378, 389, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992) ("substantive crime and a conspiracy to commit that crime are not the 'same offence' for double jeopardy purposes"); *United States v. Cortwright,* 528 F.2d 168, 176 (7th Cir. 1975) ("Double jeopardy is not violated by a trial on a substantive count and a conspiracy count."). Therefore, Woods' second Section 2255 claim is without merit.

### III. Multiplicitous Indictment

Woods also argues that the grand jury indictment was multiplicitous because it charged one offense in multiple counts based on the conspiracy charge and the separate bank robbery charge. As the Seventh Circuit instructs, "[a]lthough the government may prosecute an individual for every separate criminal act he commits, the Double Jeopardy Clause prohibits the government from prosecuting an individual more than once for the same criminal act." *United States v. Moses,* 513 F.3d 727, 731 (7th Cir. 2008) (internal citations omitted). Again, Woods' multiplicitous claim is without merit because a "[c]onspiracy and the completed offense are separate crimes." *See United States v. Tedder,* 403 F.3d 836, 840 (7th Cir. 2005).

### IV. Ineffective Assistance of Trial and Appellate Counsel

Finally, Woods argues that his trial and appellate counsel were constitutionally ineffective in violation of the Sixth Amendment to the United States Constitution. To establish constitutionally ineffective assistance of counsel, Woods must show that (1) his attorney's

performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If Woods fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *See id.* at 697 ("In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant ...."); *see also United States v. Taylor,* 569 F.3d 742, 748 (7th Cir. 2009) ("Courts may deny ineffective assistance of counsel claims for lack of prejudice without ever considering the question of counsel's actual performance."). "[B]ecause counsel is presumed effective, a defendant bears a heavy burden in challenging his attorney's effectiveness." *United States v. Hatten-Lubick,* 525 F.3d 575, 579 (7th Cir. 2008); *see also United States v. Recendiz,* 557 F.3d 511, 531 (7th Cir. 2009) (there is a "strong presumption that the attorney performed effectively").

### A. Trial Counsel

Woods maintains that his trial counsel was constitutionally ineffective for failing to raise the first three claims in his Section 2255 motion to the Court, namely, Woods' *Pinkerton* instruction claim, Double Jeopardy claim, and multiplicity claim. As discussed, Woods' claims have no merit, and thus his counsel was not deficient in his performance by failing to present these claims to the Court. *See United States v. Knox,* 287 F.3d 667 (7th Cir. 2002) ("Good advocates do not raise every non-frivolous legal issue"). In fact, Woods' trial counsel had "no duty to make a frivolous argument," and "indeed is barred by the rules of professional ethics from doing so." *Fuller v. United States,* 398 F.3d 644, 625 (7th Cir. 2005) (citations omitted). Because Woods has not established the performance prong of his ineffective assistance of trial

10

counsel claim, the Court need not determine the *Strickland* prejudice prong. *See id.* at 697.

### B. Appellate Counsel

Last, Woods argues that his appellate counsel was constitutionally ineffective for failing to raise his arguments made in the present Section 2255 on appeal to the United States Court of Appeals for the Seventh Circuit. As with ineffective assistance of trial counsel claims, courts apply the two-prong test set forth in *Strickland* to evaluate the effectiveness of appellate counsel. *See Suggs v. United States,* 513 F.3d 675, 678 (7th Cir. 2008). Under the *Strickland* performance prong, an appellate counsel's performance is constitutionally deficient if counsel fails to appeal an issue that is obvious and clearly stronger than the claims counsel raised on appeal. *See id.*; *see also Stallings v. United States,* 536 F.3d 624, 627 (7th Cir. 2008). To establish the *Strickland* prejudice prong, Woods must show that there is a reasonable probability that but for his appellate counsel's deficient performance, the result of the appeal would have been different. *See Suggs,* 513 F.3d at 678; *Lee v. Davis,* 328 F.3d 896, 901 (7th Cir. 2003).

As discussed in detail above, Woods' arguments based on the separate conspiracy and bank robbery charges have no merit. It is well-established that appellate attorneys do not have to present losing arguments to provide constitutionally effective assistance of counsel. *See Whitehead v. Cowan,* 263 F.3d 708, 731 (7th Cir. 2001) ("[a]ppellate lawyers are clearly not incompetent when they refuse to follow a 'kitchen sink' approach to the issues on appeals.") (citation omitted); *see also Martin v. Evans,* 384 F.3d 848, 852 (7th Cir. 2004) ("counsel is not required to raise every non-frivolous issue on appeal"). Because Woods has not established the performance prong under *Strickland,* the Court need not consider the *Strickland* prejudice prong. *See id.* at 697.

## CONCLUSION

For these reasons, the Court denies Petitioner Donald M. Woods' motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

**Dated:** November 12, 2009

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**